UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
APR 1 4 2000
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| RYAN DICKERSON, a Minor, | * |
| by and through his parents, | * |
| DANIEL DICKERSON and | * |
| SUZANNE DICKERSON, as next | * |
| friends; et al., | * |
| | * |
| Plaintiffs, | * |
| | * |
| V. | *   SA-99-CA-1-HG |
| | * |
| UNITED STATES OF AMERICA, | * |
| | * |
| Defendant. | * |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above-styled and numbered cause was tried before the Court on January 10, 2000 through January 18, 2000. The parties appeared personally and through their representatives and attorneys of record. The Court has considered the record evidence submitted, made determinations as to relevance and materiality, assessed the credibility of the witnesses, and ascertained for its purposes the probative significance of the documentary and visual evidence presented. Upon consideration of the above, the Court finds the following facts to have been proven by a preponderance of the evidence, and in applying the applicable law to such factual findings, makes the following conclusions of law.

1. This is a health care negligence case brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, et seq. The Court has jurisdiction over the action pursuant to 28 U.S.C. §1346(b). Venue is proper pursuant to 28 U.S.C. §1402(b).

38

2. On June 26, 1998, the Department of the Air Force, through 82TRW/JAG at Sheppard Air Force Base, Texas received by certified mail, return receipt requested, three Standard Form 95s constituting the administrative claims of the Plaintiffs.

3. On June 29, 1998, the Department of the Air Force, through United States Air Force Headquarters, Washington, D.C. received by certified mail, return receipt requested, three Standard Form 95s constituting the administrative claims of the Plaintiffs.

4. Subsequent to the receipt by the Department of the Air Force Defendant's of the Plaintiffs' administrative claims, suit was filed in the United States District Court for the Western District of Texas, San Antonio Division.

5. As of the date of the filing of Plaintiff's original complaint, six months had passed since the filing of the administrative claims with the United States Air Force.

6. As the agency failed to make final disposition of the claims on or before January 5, 1999, this action was filed.[1] Plaintiffs have complied with all jurisdictional and procedural prerequisites to suit. Plaintiffs have timely and properly presented their claims under the Federal Tort Claims Act with the appropriate federal agency.

7. The Plaintiffs in this case are Ryan Dickerson, a minor child; Mrs. Suzanne Dickerson, individually and as next friend of Ryan Dickerson and First Lieutenant Daniel Dickerson, individually and as next friend of Ryan Dickerson.

---

[1] On March 4, 1999, the Department of the Air Force denied the administrative claims of the Plaintiffs.

8. The case arises from the events surrounding the birth of the minor Plaintiff, Ryan Dickerson, at Sheppard Air Force Base Hospital, Wichita Falls, Texas on March 20, 1998.

9. First Lieutenant Daniel Dickerson and Mrs. Suzanne Dickerson are the natural parents of Ryan Dickerson.

10. Pursuant to 28 U.S.C. §2679, the remedy against the United States under the Federal Torts Claims Act is exclusive with regard to claims based upon torts of federal employees acting within the scope of their employment. Plaintiffs' claims are based upon the tortious actions of the federal employees acting within the scope of their employment with the Department of the Air Force, an agency of the United States.

11. Plaintiffs have properly invoked the litigation provision of the Federal Tort Claims Act by bringing this action against the United States, specifically naming it as defendant. No suit under the act will lie against any of its agencies *e.o. nominee.* The Department of the Air Force is an agency of the United States of America.

12. The United States of America, through its agency, the Department of the Air Force, at all times material hereto, owned, operated, and controlled the hospital known as Sheppard Air Force Base Hospital (SAFBH), located in the vicinity of Wichita Falls, Texas.

13. The United States of America, through its agency, the Department of the Air Force, staffed the SAFBH facility with its employees.

14. At all times material hereto, all persons involved in the antepartum, intrapartum, and natal medical and health care services provided to Suzanne Dickerson, and her minor son, Ryan Dickerson, while at the SAFBH facility, were agents, servants and/or employees of the Department of the Air Force, the United States of America or some other agency thereof.

15. On December 9, 1999 Plaintiffs' first amended complaint was filed. The Defendant timely answered, raising the defense that Plaintiffs' are limited to the damages alleged in their administrative claims (Standard Form 95s) and original complaint, pursuant to 28 U.S.C. 2675(b).

16. This Court permitted the filing (with its increase in claimed damages) because of newly discovered evidence. At the time the administrative claim was filed, the full extent and ramifications of the minor's brain damage were not known. Plaintiffs had not been able to obtain a complete set of the medical records describing the minor's birth at the time the administrative claim was filed. However, the second request to amend the complaint was denied on March 31, 2000.

17. Plaintiffs' first amended complaint sets forth the *ad damnum* claimed by Ryan Dickerson as $25,000,000 and that of each parent as $15,000,000. The damages claimed in the first amended complaint superseded the *ad damnum* in the SF 95s of the administrative claim and the original complaint filed in this action.

18. The Defendant's amended answer also claimed a set-off/credit for the Tri-Care/CHAMPUS benefits paid on behalf of Plaintiffs. On February 24, 2000, a stipulation as to the TriCare/CHAMPUS offset was filed by the parties.

19. Specifically, this case involves claims by the Plaintiffs that the obstetrical care furnished by the United States Air Force (through its employee physicians and nurses at SAFBH) to Mrs. Suzanne Dickerson during the final days of her pregnancy, and her labor and delivery of minor Ryan Dickerson, was negligent, and the proximate cause of all the damages claimed.

20. The Defendant United States of America admits liability as to all of Plaintiffs' claims. Proximate and legal causation of all damages incurred are likewise admitted.

21. The substandard and negligent medical and nursing care provided to Suzanne and Ryan Dickerson at SAFBH surrounding the birth on March 20, 1998 resulted in brain damage to Ryan Dickerson.

22. Specifically, Ryan Dickerson suffers from the following neurological sequelae ( i.e. the neurological deficits and disorders resulting to his brain): (a) a motor disorder commonly known as cerebral palsy and medically termed spastic quadraparesis, (b) an unstable seizure disorder, (c) cortical visual impairment, (d) microcephaly, and (e) severe mental retardation.

23. Ryan Dickerson's brain damage and its neurologic sequelae are permanent and irreversible. Dickerson has suffered damages from the date of his injuries and will continue to suffer damages until the end of his lifetime.

24. Ryan Dickerson suffers from no permanent medical condition unrelated to his brain damage.

25. As a result of his brain damage and its neurologic sequelae, Ryan Dickerson is totally dependent and will require full time 24 hour nursing attendant care every day for the remainder of his life.

26. As a result of his injuries, Ryan's life expectancy has been shortened. The most convincing evidence established that if his current level of care is sustained, he has a life expectancy of 45-50 years.

27. Had Ryan not been injured, his statistical life expectancy would be 72.9 years.

28. The Court finds that the life care plan of Karen A. Perez, R.N. clearly provides for the requisite quality of care envisioned for Ryan and supported by his physician, Dr. Roy Elterman.

29. Suzanne Dickerson has a remaining statistical life expectancy of 53.4 years.

30. Daniel Dickerson has a remaining statistical life expectancy of 48 years.

31. Ryan Dickerson's damages from the date of his majority until death, include the reasonable costs of necessary medical and health care, attendant nursing care, therapy, medication, supplies, architectural improvements, equipment and equipment maintenance as required by his medical condition resulting from the occurrence in question.

32. The most credible and convincing evidence established that Ryan has suffered physical pain, mental anguish, physical impairment, and disfigurement since the date of the occurrence in question, and will continue to suffer physical pain, mental anguish, physical impairment, and disfigurement for the remainder of his life. Ryan Dickerson recognizes and is responsive to his parents' voices and touch. Despite the severity of Ryan Dickerson's injuries, he possesses a strong determination and an internal will not readily subject to clinical diagnosis.

33. Ryan Dickerson has suffered a complete and total loss of earning capacity. Ryan Dickerson will never work. Given the family history and circumstances, the probability is high that had Ryan not been injured, he would have eventually graduated from college.

34. Suzanne and Daniel Dickerson have suffered damages since the date of the occurrence, and will suffer damages to the date of Ryan Dickerson's majority, for the reasonable costs of necessary medical and health care, outside attendant nursing care, therapy, medication, supplies, architectural improvements, equipment and equipment maintenance by virtue of his disabling injuries and resulting medical conditions to the extent that they have not been reduced by TriCare/CHAMPUS as stipulated.

35. Suzanne Dickerson has suffered damages for the reasonable value of the necessary past

attendant care provided by her to her son by reason of Ryan's severely disabling and crippling injuries and medical conditions.

36. Daniel Dickerson has suffered damages for the reasonable value of the necessary past attendant care provided by him to his son by reason of Ryan's severely disabling and crippling injuries and medical conditions.

37. Since the day of Ryan's birth and as a result of the occurrence in question, Suzanne Dickerson has suffered and will continue to suffer for the rest of her life, the loss of Ryan's companionship, comfort, attention, services and contribution.

38. Since the day of Ryan's birth and as a result of the occurrence in question, Daniel Dickerson has suffered and will continue to suffer for the rest of his life, the loss of Ryan's companionship, comfort, attention, services and contribution.

39. The sum of $21,082,549.00, paid now in cash, would fairly and reasonably compensate Ryan Dickerson, from his majority until the date of his death, for the reasonable costs of necessary medical and health care, attendant nursing care, therapy, medication, supplies, architectural improvements, equipments and equipment maintenance required by Ryan's medical condition.

40. The sum of $2,230,793.00 would fairly and reasonably compensate Ryan Dickerson for his complete and total loss of earning capacity (to work life expectancy), all of which would have been incurred after the date of his eighteenth birthday.

41. The sum of $1,500,000.00 paid now in cash, would fairly and reasonably compensate Ryan Dickerson for his injuries which resulted from the occurrence in question for past and future physical pain and suffering.

42. The sum of $1,000,000.00 paid now in cash, would fairly and reasonably compensate Ryan Dickerson for his injuries which resulted from the occurrence in question for past and future mental anguish. The Court finds that there was credible evidence at trial of Ryan's frustration and resulting mental anguish.

43. The sum of $1,000,000.00 paid now in cash, would fairly and reasonably compensate Ryan Dickerson for his injuries which resulted from the occurrence in question for past and future physical impairment.

44. The sum of $1,500,000.00 paid now in cash, would fairly and reasonably compensate Ryan Dickerson for his injuries which resulted from the occurrence in question for past and future disfigurement.

45. The sum of $4,856,427.00 paid now in cash, would fairly and reasonably compensate Suzanne from today until Ryan's majority, for her share of the reasonable costs of necessary medical and health care, attendant nursing care, therapy, medication, supplies, architectural improvements, equipments and equipment maintenance required by Ryan's medical condition.

46. The sum of $4,856,427.00 paid now in cash, would fairly and reasonably compensate Daniel Dickerson, from today until Ryan's majority, for his share of the reasonable costs of necessary medical and health care, attendant nursing care (provided by individuals other than Ryan's parents), therapy, medication, supplies, architectural improvements, equipments and equipment maintenance required by Ryan's medical condition.

47. The sum of $5,000,000.00 paid now in cash, would fairly and reasonably compensate Suzanne Dickerson for her loss of Ryan's companionship, comfort, attention, services and contribution resulting from the severely disabling and permanent injuries sustained.

48. The sum of $5,000,000.00 paid now in cash, would fairly and reasonably compensate Daniel Dickerson for his loss of Ryan's companionship, comfort, attention, services and contribution resulting from the severely disabling and permanent injuries sustained.

49. The sum of $100,000.00 paid now in cash, would fairly and reasonably compensate Suzanne Dickerson for the past attendant care provided by her to her son from the date of his birth until the date of trial (approximately two years), resulting from Ryan's severely disabling and crippling injuries and medical conditions.

50. The sum of $50,000.00 paid now in cash, would fairly and reasonably compensate Daniel Dickerson for the past attendant care provided by him to his son from the date of his birth until the date of trial (approximately two years), resulting from Ryan's severely disabling and crippling injuries and medical conditions.

51. The sum of $13,500.00 (stipulated at trial), paid now in cash, would fairly and reasonably compensate Suzanne Dickerson for her one-half of the un-reimbursed medical and health care expenses for Ryan Dickerson from the date of his birth until the date of trial, resulting from the severe and permanent disabling injuries sustained by Ryan Dickerson.

52. The sum of $13,500.00 (stipulated at trial), paid now in cash, would fairly and reasonably compensate Daniel Dickerson for his one-half of the un-reimbursed medical and health care expenses for Ryan Dickerson from the date of his birth until the date of trial, resulting from the severe and permanent disabling injuries sustained by Ryan Dickerson.

53. Based on the stipulation of the parties, the Court finds that the government is entitled to a TriCare/CHAMPUS offset of $172,173.00 against the future medical and attendant care damages awarded by the Court in this case.

54. The Court finds that despite the damages proved, the Plaintiffs are limited to the damages alleged in their first amended complaint. Any damages awarded in excess of that amount shall be reduced to no more than the values in the *ad damnum* of the first amended complaint.

55. The Court is mindful that, notwithstanding the aggravated nature of the injuries sustained by the Plaintiffs (and the conduct of Major Richard Gist, M.D. that could easily be characterized as *criminal*), they are not entitled to an award of punitive damages against the United States. Title 28 U.S.C. §2674.

56. A guardian *ad litem* was appointed to protect the interests of the minor plaintiff, Ryan Dickerson. The appointment was agreed to by all parties. Substantial pre-trial preparation on the part of the guardian *ad litem* was necessary. In addition to reviewing pleadings, interrogatories and requests for admissions, medical records were scoured to determine the nature and extent of the damage to the minor plaintiff. Depositions which were medical in nature were also extensively reviewed in writing and by observing video tapes of same. At least one deposition was attended by the guardian *ad litem*. Numerous conferences, both in person and telephonically, were held between the guardian *ad litem* and the attorneys representing Plaintiffs. Strategy and evidence selection was analyzed. Home visits were also required so that the guardian *ad litem* could observe and evaluate the exact physical condition of the minor plaintiff so that said minor's needs could be determined. In January of 2000, the guardian *ad litem* prepared for and attended alternative dispute resolution in the form of mediation. All of the guardian *ad litem's* efforts worked toward developing and protecting the interests of the minor plaintiff. The guardian *ad litem* has submitted that 250 -300 hours of work have been spent in pre-trial preparation on this case.

57. At trial, the guardian *ad litem* took an active role, preparing for and executing the examination of various witnesses. During trial, some 75-85 hours were spent by the guardian *ad litem*. Since trial, the guardian *ad litem* has prepared a post-trial report to the Court and reviewed the proposed findings and conclusions of all counsel. An additional 20 hours have been expended in preparing the report, conferring with trial counsel, and reviewing various documents. The guardian *ad litem* will have the responsibility of preparing certain post-trial documents such as a trust for the minor plaintiff. The terms, conditions, and limitations of such trust will have to be examined, determined, and made a part of the ultimate instrument drafted.

58. The guardian *ad litem* has requested that a reasonable fee for his services be set at 1.5% of the amount awarded to the minor plaintiff. The fee is consistent with similar legal services in this locality. No party has contested the amount requested, only whether it should be taxed as costs or attorney fees.

59. The Court finds that an appropriate fee for all pre and post-trial services rendered by the guardian *ad litem* be set at 1.5% of the amount awarded to the minor child for a total of $375,000.00. The Court further finds that these fees should be taxed as costs.

## CONCLUSIONS OF LAW

This Court has jurisdiction of the parties and subject matter in this cause to hear and determine liability and damage issues arising out of the injuries sustained by Ryan Dickerson, Suzanne Dickerson, and Daniel Dickerson proximately caused by negligent medical and nursing care provided at SAFBH on March 19, 1998 and March 20, 1998, pursuant to Title 28 U.S.C. §§1346(b), 2401, and 2671 et seq.

11

The injuries and damages sustained by Ryan Dickerson and his parents, Suzanne and Daniel Dickerson were caused by the negligent and wrongful acts or omissions of the United States Air Force employees, in particular Major Richard Gist, M.D., while acting within the scope of their office and employment with the United States Air Force, an agency of the United States government, as such terms and phrases are defined and understood under Title 28 U.S.C. §§1346(b), 2401, and 2671 et seq. Under circumstances where the United States, if a private person would be liable to the Plaintiff claimants in accordance with the negligence and tort law of the State of Texas, the substantive law applicable to this case.

The Defendant, United States of America, is legally liable for the injuries and damages sustained by Ryan Dickerson and his parents, Suzanne and Daniel Dickerson by reason of the negligent medical and nursing care provided by the Air Force, at SAFBH on March 19 and March 20, 1998 which was a proximate cause of the occurrence in which Ryan Dickerson and his parents, Suzanne and Daniel Dickerson sustained injuries and resulting damages.

The Court finds that all funds awarded to or for the benefit of, the minor, Ryan Dickerson, should be placed in a trust as provided for in §142.005 of the Texas Property Code. The guardian *ad litem* shall advise the parties and the Court as to the suggested terms, conditions, and limitations of such a trust. The Court will also consider the guardian *ad litem's* opinion as to the appointment of a proper trustee.

Judgment shall be entered against the United States of America in favor of the Plaintiffs as follows:

Suzanne and Daniel Dickerson, as next friends of Ryan Dickerson, a minor, shall recover in the total amount of $25,000,000.00 ($28,313,342.00 of Ryan's damage less the *ad damnum*

overage of $3,313,342.00).

Suzanne and Daniel Dickerson, as next friends of Ryan Dickerson, a minor, shall each recover $4,856,427.00 (together $9,712,854.00) for Ryan's medical needs from the time of trial until his majority. Subtracting the TriCare/CHAMPUS offset of $172,173.00, the total award is $9,540,681.00 (or $4,770,340.50 each).

Suzanne Dickerson, individually, shall recover a total of $5,113,500.00.

Daniel Dickerson, individually, shall recover a total of $5,063,500.00.

All amounts rendered in favor of Ryan Dickerson, a minor, or awarded to others for purposes of his future medical care shall be held in trust for the use and benefit of said minor.

All findings of fact that are more appropriately considered conclusions of law are to be so deemed. Any conclusion of law more appropriately considered a finding of fact, shall be so deemed.

So **ORDERED** this 14th day of April, 2000.

_____
**H.F. GARCIA**
**U.S. District Judge**